IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES EUGENE MOORE,
    Plaintiff,

vs.                                             CIVIL ACTION 19-00605-KD-MU

LT. CLEO TOLLIVER,
    Defendant.

## Report & Recommendation

Plaintiff, Charles Eugene Moore, an Alabama inmate proceeding *pro se*, filed the instant case alleging violations under 42 U.S.C. § 1983. (Docs. 1, 3). The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72(a)(2)(R) for appropriate action. This action is before the Court on Defendant Cleo Tolliver's motion for summary. After a thorough examination of the record, and for the reasons discussed herein, it is recommended that Defendant Tolliver's motion be **GRANTED**, and Plaintiff Charles Eugene Moore's suit be **DISMISSED** in its entirety.

    I.    Background and Complaint Allegations.

Plaintiff Charles Eugene Moore ("Plaintiff" or "Moore") alleges that on February 4, 2018, Defendant Cleo Tolliver used excessive force against him in violation of the Eighth Amendment, when Defendant Tolliver sprayed a can of mace on Moore while he was locked in a shower in Fountain Correctional Facility's ("Fountain") segregation unit and

said that he was going to kill Plaintiff.[1]  (Doc. 3 at 5).  In support of his allegations, Plaintiff states there is a body chart, an excessive force document, documents with psychological associate Dr. King-Evans, and the Equal Justice attorney, who reported the incident to the Justice Department.  (*Id*.).  Plaintiff claims that due to the use of force, he suffers from post-traumatic stress disorder, mental and psychological stress, anxiety, nerve damage, pain and suffering.  (*Id*.).  Plaintiff has demanded an award of $67 million in compensatory damages, $700,000 in punitive damages, a preliminary injunction, trial by jury, Plaintiff's costs, and any additional relief deemed just.  (*Id*. at 7-8).

Defendant Tolliver has answered the suit and denied the allegations asserted against him.  (Doc. 25).  According to Defendant Tolliver, on the date in question, he sprayed a burst of chemical agent to the facial area of Plaintiff after Plaintiff repeatedly refused orders to submit to handcuffs.  (Doc. 26).  Defendant asserts that all force used was for the purpose of maintaining order and that Plaintiff was charged with multiple disciplinary charges for his insubordination, threats, and other actions.  In support of his denial of Plaintiff's allegations, Defendant has produced a special report, which includes a personal affidavit, Incident and Duty Officer Reports, Moore's body chart, Use of Force

---

[1]   Plaintiff Moore makes additional claims against Defendant Tolliver accusing him of torture, negligence, unfair discrimination, threats and wrongful acts.  (Doc. 3 at 5-6).  Precedent has made clear that the Constitution does not purport to supplant traditional tort law and such claims are not actionable pursuant to § 1983.  *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986).  Given that the undersigned finds no constitutional violation has occurred, to the extent that Plaintiff seeks to pursue the asserted state claims, this court declines to exercise jurisdiction over them pursuant to 28 U.S.C. § 1397(c)(3).  *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendent state claims rests within the discretion of the district court.").

Investigative Report, and disciplinary records, which all support Defendant's version of the facts and evidence that the force used against Plaintiff was applied in a good faith effort to maintain or restore order. (Docs. 26-1; 26-2; 26-3; 26-4; 26-5; 26-6).

In response to Defendant's special report, Plaintiff claimed that the incident necessitated a dosage increase to his nerve pain medication and further indicated that Dr. King-Evans documented his mental health issues. (Doc. 28). Thus, the Court ordered Defendant to produce all medical, psychiatric, and sick call records related to Plaintiff. (Doc. 33). Following Defendant's compliance with the order and submission of relevant medical records, the Court converted Defendant's answer and special report into a motion for summary judgment (doc. 35), to which Plaintiff has responded, maintaining the "not guilty" findings of his disciplinary charges support the veracity of his claim. (*See* Doc. 36 at 1, 9-17). This motion is therefore ripe for consideration.

II. Summary Judgment Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust*

4

*Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III. Discussion.

Plaintiff Moore proceeds pursuant to 42 U.S.C. § 1983. "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that Defendant Tolliver, as an employee of the Alabama Department of Corrections, is a state actor for purposes of this action. Plaintiff must establish that Defendant Tolliver, personally, acted to deprive him of a constitutional right. In this action, Plaintiff claims Defendant violated his Eighth Amendment rights to be free from cruel and unusual punishment when he was sprayed unnecessarily with a chemical agent.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth

5

Amendment excessive force claim against the defendants, Plaintiff must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience"). Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it "is not of a sort repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim) (internal quotation marks and citation omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 38.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied maliciously and sadistically

> to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skirtch v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). Accordingly, in determining whether the force used was excessive, relevant factors include the need for the application of force, the relationship between that need and the amount of force used, the extent of injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. 312, 320-21. Notably, prison officials "acting to preserve discipline and security" are given "broad deference" when evaluating whether force used was excessive or not. *Pearson v. Taylor*, 665 F. App'x 858, 863-64 (11th Cir. 2016); *see also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

Here, as previously discussed, Plaintiff alleges that on February 4, 2018, Defendant Tolliver mased him (with a whole can of mase) in a locked and confined shower and stated that he was going to kill Tolliver.[2] (Doc. 3 at 5).

---

[2] Essential to an § 1983 claim is that the conduct complained of deprive the plaintiff of rights, privileges, or immunities secured by the Constitution (or laws of the United States), *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999), and verbal threats and harassment alone do not violate the Constitution. *Cf. Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *see also Swoboda v. Dubach* 992 F.2d 286, 290 (10th Cir.1993) (allegations that officers threatened to kill inmate not cognizable under Section 1983); *Hopson v. Fredricksen*, 961 F.2d 1374,1378 (8th Cir.1992) (mere verbal threats generally do not constitute a Section

> Defendant Tolliver avers:
>
> On February 4, 2018, at approximately 10:20 p.m., I, Correctional Lieutenant Cleo Tolliver was called to the Restrictive Housing Unit-L, due to inmate Charles Moore, B/M 297332, throwing feces on two (2) other inmates, as Correctional Officer Christopher White was escorting inmate Moore to the shower area, to take a shower. I entered RHU-L and observed inmate Moore in the shower and ordered inmate Moore to place his hands behind his back, to be handcuffed. Inmate Moore refused and began yelling out verbal threats toward me, stating, "Come on in here you punk [MF] and watch what I do to you." After several other loud verbal commands for inmate Moore to place his hands behind his back, to be handcuffed, inmate Moore further stated, "F--- that, do what you got to do. I'm gonna show you something when you open this door." I released one burst of Sabre Red chemical spray from my Canister to the facial area of inmate Moore and ordered inmate Moore to place his hands behind his back, to be handcuffed. Inmate Moore complied and was taken to the Health Care Unit for decontamination and a medical assessment, with redness to the front and back of the neck are noted, with no other injuries. Inmate Moore was then escorted back to his assigned cell without incident. Inmate Moore received disciplinary action for threats, assault on an inmate, failure to obey a direct order of an ADOC Employee, insubordination, and intentionally creating a security, safety, or health hazard. I never stated to inmate Moore that I would kill him. Inmate Moore's complaint is false. End of Statement.

(Doc. 26-1).

To overcome summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotation marks and citation omitted). And, the court is obligated to accept the plaintiff's version of facts, "provided they are sufficiently supported by evidence of record", *Sconiers*, 946 F.3d at 1263, and "specific facts" in Plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir.

---

1983 claim). A factfinder, however, may deduce a defendant's subjective intent of harm based on defendant's actions, coupled with his or her alleged verbal abuse.

2014). However, the undersigned notes the existing tension between accepting the plaintiff's version of the facts as true while concurrently recognizing the parties' evidentiary burden on summary judgment. Defendant Tolliver has put forth sufficient evidence that Plaintiff repeatedly refused orders to be placed in handcuffs and that force was used in good faith effort to restore order and discipline. Plaintiff, thus, bears the burden of showing sufficient evidence to establish a genuine dispute of material fact as to whether he was compliant with Defendant Tolliver's orders and putting forth allegations that the application of force extended beyond the need for force. Despite resolving all factual issues in Plaintiff's favor, the undersigned finds it cannot ignore Plaintiff's evidentiary burden on summary judgment, and Plaintiff's failure to meet his burden.

No doubt, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennet v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Specifically, force may be used against a prisoner who fails to comply with the direct orders of an officer. *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted). And, pepper spray has long been recognized by The Eleventh Circuit as "an accepted non-lethal means of controlling unruly inmates." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F,3d 701, 709 (11th Cir. 2010). Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation. *Pearson*, 665 F. App'x at 864. Accordingly, a short

burst of pepper spray (around 5 seconds or less) is "not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Id.*

Not once does Plaintiff deny, dispute, or refute (in any pleading) that Defendant Tolliver ordered him to place his hands behind his back to be handcuffed. Plaintiff further fails to deny, dispute, or refute that he failed to comply with Defendant Tolliver's multiple orders. What is more, Plaintiff fails to make even a generalized denial of misconduct, and the undersigned finds Plaintiff's argument that he was found "not guilty" of the disciplinary charges brought against him insufficient to support his claim - given that the disciplinary hearing officer noted a "procedural violation" as the reason for the "not guilty" decision, not Plaintiff's innocence.³ Consequently, the record before the court shows that Plaintiff repeatedly refused to follow Defendant Tolliver's orders to be placed in handcuffs.⁴

---

³ To the extent that Plaintiff challenges that the "not guilty" findings of his disciplinary hearings reflect that he did not disobey Defendant Tolliver's orders to submit to handcuffs or threaten Defendant Tolliver, the undersigned is not persuaded.
  The record reflects that Plaintiff received disciplinary charges of assault on an inmate, insubordination, failure to obey a direct order of an ADOC employee, intentionally creating a security, safety, or health hazard. (Doc. 36 at 9-17). Plaintiff received notice of these charges and was informed that the hearing date for the charges was rescheduled from March 6, 2018 to March 11, 2018, due to a facility lockdown, following an unforeseen assault on DOC staff. (Doc. 26-6 at 2, 8, 14, 20, 26). However, the record confirms that the hearing was not held until March 27, 2018, where Plaintiff was found "not guilty" of the charges, due to a "procedural violation". (Doc. 26-6 at 3-5, 9-11, 15-17, 21-23, 27-29).
  Accordingly, the evidence of record suggests that Plaintiff was found to be without guilty due to the hearing not be held in a timely manner (or some other due process or procedural violation), not Plaintiff's innocence. Thus, the disciplinary hearing findings do not support Plaintiff's version of the facts.

⁴ *But cf., Williams v. Rickman*, 759 F. App'x 849 (11th Cir. 2019) (The district court erred in summary judgment dismissal of the plaintiff's § 1983 excessive force claims against correctional officers because the plaintiff's sworn statements created an issue of

The record further shows that Defendant Tolliver attempted to temper the severity of the response used by giving multiple orders to Plaintiff to place his hands behind his back and be handcuffed, thereby providing multiple opportunities for Plaintiff to comply.

The record also supports that the amount of force used was appropriate to the need. Defendant has submitted Plaintiff's body chart following the incident, which shows that Plaintiff had redness to the front and back of his neck, with no injuries and that he made no complaints of injuries at that time.[5] Accordingly, the record is void of evidence of any sick call complaints, follow up medical visits, chart notes, mental health notes, or grievances documenting that Plaintiff suffered nerve damage, breathing complications, or psychological effects from being sprayed with a chemical agent on February 4, 2018. To the extent that Plaintiff contends he suffered nerve damage from the chemical spray that caused his Neurontin dosage to be increased, the undersigned finds insufficient support in the record. Specifically, the current record is void of sick call requests, or Plaintiff's allegations that he made such complaints, or medical notes identifying complaint of Plaintiff following the spraying incident, or nursing or doctor's notes explaining the prescription change. There are simply no records describing the reason Plaintiff's Neurontin dosage changed. Furthermore, examination of the prescription dosage

---

fact as to whether he created a disturbance warranting the use of pepper spray. The defendants claimed the plaintiff was being disruptive, i.e., shouting profanities and kicking his cell door, and the plaintiff denied causing a disturbance. The Eleventh Circuit explained that "[a]t summary judgment, the general denial of *any* misconduct can, if the evidence is viewed in the light most favorable to the speaker, be taken as a denial of *specific* misconduct.").

5     The body chart reflects that Plaintiff stated to the examining nurse, "I got sprayed while in the shower" and "I want my paperwork lined up cause I got a law suit". (Doc. 26-4).

change does not directly correspond with the February 4, 2018 incident. Instead, the record shows that from January 11, 2018 to March 27, 2018, Plaintiff was prescribed and received 300mg of Neurontin, three times a day (Doc. 34-1 at 49, 52, 54). On March 28, 2018, Plaintiff began receiving a single dose of 600mg of Neurontin (once a day). (Doc. 34-1 at 49). Then, from April 25, 2018 through July 25, 2018, over two and half months after the incident of the complaint, the Neurontin dosage increased to 600mg, three times a day. (Doc. 34-1 at 41). This dosage change, without context, medical records, or articulated simultaneous complaints cannot support an injury of nerve damage from the February 4, 2018 chemical spraying. Likewise, the fact that Plaintiff was prescribed and received Cymbalta, 30 mg, once a day, from August 15, 2018 through December 26, 2019 (when it was apparently discontinued), is insufficient evidence to deduce or support a claim for increase nerve damage or psychological injury due to the February 4, 2018 incident of this complaint. (*See* Doc. 34-1 at 17, 25, 34). The undersigned pauses to note that Plaintiff has had ample opportunity to provide evidence to the opposition of this motion (including self-serving allegations and/or disputes to the wholeness, accuracy of the record) but has failed to do so.[6] Thus, the current record simply lacks facts necessary for a reasonable finder of fact to conclude that Plaintiff complied with Defendant Tolliver's

---

6      In response to the motion, Plaintiff has reiterated his injuries of irreparable physical and psychological harm, including nerve damage, sensory deprivation, anxiety, P.T.S.D., mental stress, psychological torture and stress and challenged that the "not guilty" findings of his disciplinary charges prove his innocence and Defendant Tolliver's liability. (Doc. 36 at 1). Plaintiff has put forth copies of his February 4, 2018 body chart, Defendant Tolliver's personal affidavit, the February 4, 2018 Incident Report, and the Disciplinary hearing final reports. (Doc. 36 at 3-17). Plaintiff, however, has failed to dispute that the record is incomplete, for instance lacking conclusive medical records, chart notes, sick call requests, and/or grievances.

orders or was sprayed maliciously. Additionally, the record lacks facts sufficient to show that the use of force was objectively harmful, as Plaintiff's pleadings are void of description or allegations of any specific harm or injury, including pain, burning, swelling, coughing, trouble breathing, confinement in a contaminated area, prolonged exposure to chemical fumes, etc. There are simply no subsequent medical records (and Plaintiff has failed to put forth any nor alleged the failure of Defendant to produce such) indicating lingering effects of the chemical spray that would give rise to an Eighth Amendment.[7] *Cf.*, *Hudson*, 503 U.S. at 8 ("What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue."); *see also, Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002) (in an incident involving pepper spray, a case-specific inquiry should take place "consider[ing] the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred").

---

[7] Generally, the harm suffered from pepper spray is considered *de minimis* and falls short of establishing a physical injury. *Cf., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) (noting that "pepper spray ordinarily causes only temporary discomfort"). However, when additional injuries are established, courts have found the "physical injury" to be greater than de minimis. *See Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) (20-minute placement of prisoner in a small, unventilated, contaminated cell after the lawful use of pepper spray constituted excessive force); *Thompson v. Smith*, 805 F. App'x 893 (11th Cir. 2020) (greater than de minimis injury occurred when the plaintiff was left with the chemical agents on his face for approximately 20 minutes; experiencing coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray; and was returned to a cell that remained contaminated with pepper spray residue for a least an additional day); *Blount v. Farmer*, No. 7:14CV00418, 2015 U.S. Dist. LEXIS 93422, 2015 WL 4404810, at *3 (W.D. Va. July 17, 2015) (denying correctional officer's motion for summary judgment on objective inquiry of excessive force claim where inmate alleged pepper spray caused "coughing, sneezing, excessive mucus, and a painful burning sensation on his skin that lasted for a whole day.").

Thus, as the facts currently stand, the *Whitley* factors are in favor of Defendant Tolliver, and Plaintiff has failed to carry his burden of establishing the use of chemical spray against him was excessive force.

Accordingly, summary judgment should be **GRANTED** in favor of Defendant Cleo Tolliver on this claim.

## IV.   Conclusion.

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED**, and Plaintiff's Eighth Amendment claims should be **DISMISSED**.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### **Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala.Gen. LR. 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of

justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this 19th day of August, 2021.

                                              s/P. Bradley Murray
                                              UNITED STATES MAGISTRATE JUDGE